1

Honorable Kymberly K. Evanson

2

3

4

5

6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7

8

MICHAEL SCOTT LANGTON, an
individual,

No. 2:24-cv-01073-KKE

9

Plaintiff,

DECLARATION OF DETECTIVE
TAYLOR ALLEN

10

v.

11

THE CITY OF BELLINGHAM, a municipal
corporation, CHAD CRISTELLI, and
DONALD ALMER,

Note on Motion Calendar:
November 7, 2025

12

13

Defendants.

14

15    I declare under penalty of perjury under the laws of the United States that I am

16    over the age of 18 and otherwise competent to testify, and the following is true and based

17    on my personal knowledge.

18    **PROFESSIONAL BACKGROUND**

19    1.    I am a police officer with the Bellingham Police Department. I joined the

20    Department in 2014 and became a detective in 2020.

21    2.    As a detective, I am assigned to the Special Victims Unit. Among other

22    things, I investigate internet crimes against children.

23

DECL. OF DET. TAYLOR ALLEN
(No. 2:24-cv-01073-KKE) - 1

**SEAMARK LAW GROUP PLLC**
400 WINSLOW WAY E, STE 230
BAINBRIDGE ISLAND, WA 98110
(206) 502-2510

1

## INVESTIGATION OF OFFICER LANGTON

2

### Ms. Harp reported criminal conduct by Officer Langton

3      3.      On the afternoon of July 26, 2022, my supervisor Sergeant Brock Crawford

4      and his supervisor Lieutenant Chad Cristelli requested that I come to the Bellingham

5      Police Station to take a report from a woman named Jasmine Harp regarding a Ferndale

6      police officer.

7      4.      Around 3:30 p.m., I arrived at the Police Station, listened to the recording of

8      Ms. Harp's 911 call, and then brought Ms. Harp to an interview room where I took her

9      recorded statement.

10      5.      As detailed below, Ms. Harp reported that Ferndale Police Officer Michael

11      Scott Langton had repeatedly told her that he was sexually attracted to children, had

12      asked her to watch child pornography with him, and finally had stated he wanted to have

13      sex with her 12-year-old daughter. She showed me numerous text messages from Officer

14      Langton that corroborated her statement.

15      6.      Ms. Harp explained that a couple of weeks prior, Officer Langton had

16      responded to a 911 call she made about a car crash at her apartment complex. Officer

17      Langton reminded her that they had met once several years before when he responded

18      to a different call, and she thought it was odd that he remembered her name.

19      7.      The following evening, Officer Langton came by Ms. Harp's apartment while

20      she was away. Ms. Harp's 12-year-old daughter answered the door, and Officer Langton

21      spoke briefly with her. Officer Langton then called Ms. Harp and claimed he had forgotten

22      the name of the company that managed her apartment complex, but Ms. Harp suspected

23      that was just an excuse to call her.

DECL. OF DET. TAYLOR ALLEN
(No. 2:24-cv-01073-KKE) - 2

**SEAMARK LAW GROUP PLLC**
400 WINSLOW WAY E, STE 230
BAINBRIDGE ISLAND, WA 98110
(206) 502-2510

8.      After that, Officer Langton and Ms. Harp began calling and texting each other regularly. Officer Langton gave Ms. Harp his personal cellphone number and then, about a week later, asked her to install an encrypted-messaging app called Signal on her phone, and they began sending messages via Signal. Officer Langton set the Signal messages to autodelete, but Ms. Harp started taking screenshots of them once Officer Langton began referencing his sexual attraction to 12-year-old girls. Ms. Harp told me that Officer Langton "is obsessed with the idea of having sex with a 12-year-old."

9.      On the evening of July 19, Officer Langton invited Ms. Harp to his house in Blaine, and she went there. She observed that he had "a mountain of ammunition and guns." He asked her if she wanted to watch "barely legal" porn, which she understood to mean pornography involving 18-year-old women, but she declined. He also asked if she would role play as a child and, again, she declined. Then, while they were having sex that night, Officer Langton whispered in her ear, "Please, please, tell me you'll watch 12-year-old porn."

10.     Over the course of the next week, Officer Langton repeatedly sent Ms. Harp text messages via Signal that graphically described his obsession with child pornography and his desire to have sex with a child. Ms. Harp showed me some of the screenshots she took of these messages, including ones he had sent the night before (July 25) that read:

- "I want a 12 year old."

- "I like illegal."

- "I think about it all the time."

- "I just like young."

DECL. OF DET. TAYLOR ALLEN
(No. 2:24-cv-01073-KKE) - 3

SEAMARK LAW GROUP PLLC
400 WINSLOW WAY E, STE 230
BAINBRIDGE ISLAND, WA 98110
(206) 502-2510

- "I want to explore young 12 year old girls. Or 11."

- "I'd like to watch young poo [sic] . . . . Porn. With yiu [sic]."

- "Look at naked preteen girls."

- "I want you to teach a young teen how to please."

- "I just have always thought about licking a 12 year old pussy out."

- "I'd love to act on it."

- "The thought of it turns me on."

- "I really want to lick & suck her bald pussy."

- "I want to."

- "I think about it."

- "Please."

- "Just let me lick it."

- "I want to lick a young."

- "Please understand."

- "Will you please play with me."

- "I want to play with you snd [sic] your daughter, nudist beach."

11.    Ms. Harp told me that she understood this last message ("I want to play with you and your daughter, nudist beach.") to be a proposition to let Officer Langton have sex with her 12-year-old daughter, whom he had met when he came by her apartment a couple weeks prior.

12.    Ms. Harp allowed one of our other detectives to download the text messages she had saved to her phone. Attached hereto as **Exhibit A** are the screenshots

**SEAMARK LAW GROUP PLLC**
400 WINSLOW WAY E, STE 230
BAINBRIDGE ISLAND, WA 98110
(206) 502-2510

of these messages that Officer Langton sent Ms. Harp over Signal. Also attached hereto as **Exhibit B** is a transcription of these messages for easier readability.

13.     Ms. Harp also told me that Officer Langton had "encrypted internet . . . [s]o he can watch whatever kid porn he wants and not get caught."

14.     When I reviewed all the messages from Officer Langton, I saw that he had also texted Ms. Harp: "Can we at least. look at young porn together? I say porn but I guess it's just nude young girls. There's a nudist site called purenudism [sic]. Is cute." The "purenudism" website contains photos of naked children, who appear to be between the ages of 10 and 15 years old, in sexual exhibition.

15.     Ms. Harp also mentioned that Officer Langton drove by her apartment every night that he was on patrol—sometimes several times a night. (When her 12-year-old daughter was interviewed a couple of days later, we learned that she had seen Officer Langton parked on the street behind their apartment complex at night, possibly watching their apartment.) Ms. Harp said she wanted a restraining order. I told her that we could help her get that process started, but that the court would issue any order.

16.     Ms. Harp had told Officer Langton that she had taken her children to a movie that day, so that he would not think they were at home. But Officer Langton continued to message Ms. Harp while she was at the police station.

**Prosecutors and Judge Jones agreed there was probable cause**

17.     Based on Ms. Harp's recorded statement and the text messages that Officer Langton had sent her, I believed there was probable cause to arrest Officer Langton for several different felonies. In short, the evidence showed that Officer Langton had spent two weeks grooming Ms. Harp to try to persuade her to allow him to rape her 12-year-old

DECL. OF DET. TAYLOR ALLEN
(No. 2:24-cv-01073-KKE) - 5

**SEAMARK LAW GROUP PLLC**
400 WINSLOW WAY E, STE 230
BAINBRIDGE ISLAND, WA 98110
(206) 502-2510

daughter and to view child pornography with him. Potential crimes that would apply included **Attempted Rape of a Child in the 2nd Degree** (RCW 9A.28.020 & RCW 9A.44.076), **Attempted Child Molestation in the 2nd Degree** (RCW 9A.28.020 & RCW 9A.44.086), **Criminal Solicitation of Rape of a Child in the 2nd Degree** (RCW 9A.28.030 & RCW 9A.44.076), **Criminal Solicitation of Child Molestation in the 2nd Degree** (RCW 9A.28.030 & RCW 9A.44.086), **Possession of Depictions of Minor Engaged in Sexually Explicit Conduct** (RCW 9.68A.070), or **Viewing Depictions of a Minor Engaged in Sexually Explicit Conduct** (RCW 9.68A.075).

18.    While other officers worked on downloading the messages from Ms. Harp's phone and connecting her with a victim's advocate, I met with Detective Travis Hauri, Sergeant Crawford, Lieutenant Cristelli, and Deputy Prosecuting Attorneys Kellen Kooistra and Benjamin Pratt from the Whatcom County Prosecuting Attorney's Office. I briefed the group on the facts I had gathered and explained that I believed there was probable cause to arrest Officer Langton for several potential felonies. Mr. Kooistra and Mr. Pratt agreed and suggested that the crimes best fitting the facts appeared to be "solicitation of a minor" and "possession of child pornography." I understood "solicitation of a minor" to be shorthand for Criminal Solicitation of Rape of a Child in the 2nd Degree (RCW 9A.28.030 & RCW 9A.44.076) or Criminal Solicitation of Child Molestation in the 2nd Degree (RCW 9A.28.030 & RCW 9A.44.086), and I understood "possession of child pornography" to be shorthand for Possession of Depictions of Minor Engaged in Sexually Explicit Conduct (RCW 9.68A.070).

19.    Mr. Kooistra and Mr. Pratt also agreed that we should obtain a search warrant for Officer Langton's home and conduct the search as soon as possible to prevent

DECL. OF DET. TAYLOR ALLEN
(No. 2:24-cv-01073-KKE) - 6

**SEAMARK LAW GROUP PLLC**
400 WINSLOW WAY E, STE 230
BAINBRIDGE ISLAND, WA 98110
(206) 502-2510

1    the destruction of evidence that was likely to occur if Officer Langton learned that Ms.

2    Harp had gone to the police. Mr. Kooistra told me to call him when I was ready to apply

3    for the warrant, and he would connect me with a judge.

4        20.    Once I had prepared a statement of facts, I called Mr. Kooistra, and he

5    conferenced in Whatcom County Superior Court Judge Evan Jones. After taking an oath

6    to tell the truth, I presented verbal testimony explaining the facts and requested a warrant

7    to search Officer Langton's home and to seize his cell phones, computers, and other

8    digital-storage devices. Judge Jones found there was probable cause for both "solicitation

9    of a minor" and possession of child pornography, and he authorized a warrant to search

10   Officer Langton's home and to seize his computers, cellphones, and other digital-storage

11   devices. Attached as **Exhibit C** is the warrant.

12       21.    Detective Hauri, Sergeant Crawford, Lieutenant Cristelli, Deputy Chief

13   Donald Almer, and I also met to discuss the plan for executing the search warrant and

14   arresting Officer Langton. We all agreed that a custodial arrest (taking Officer Langton to

15   jail) would be the safest for Ms. Harp and her daughter. The fact that a police officer had

16   behaved in such a shocking manner led us to believe Officer Langton was unpredictable

17   and potentially dangerous. We also anticipated he would be upset to learn that he had

18   been caught, which he had to know would mean that his career was probably over and

19   that he might be going to prison. A custodial arrest would allow time for Officer Langton

20   to cool down and would also allow time for Ms. Harp to seek a protective order or make

21   other plans for her family's safety.

22       22.    Because I was concerned for the safety of Ms. Harp and her children, I

23   asked Ms. Harp to stay away from her apartment until we had Officer Langton in custody.

SEAMARK LAW GROUP PLLC
400 WINSLOW WAY E, STE 230
BAINBRIDGE ISLAND, WA 98110
(206) 502-2510

1    She agreed to do that, and I told her I would call her once he was arrested.

2        **Officer Langton was arrested, and his home was searched**

3        23.    Deputy Chief Almer briefed me and other officers on a three-step plan to

4    safely arrest Officer Langton. The first step would be for a supervisor from the Ferndale

5    Police Department to order Officer Langton to come to the Ferndale Police Station where

6    he could be arrested outside his home and away from his minor son. If that did not work,

7    the next step would be for a hostage negotiator to telephone Officer Langton to arrange

8    for him to come outside and surrender. And finally, if neither of the prior steps worked,

9    the SWAT team would conduct a surround and callout.

10        24.    As the SWAT team staged near Officer Langton's house in Blaine,

11    Lieutenant Cristelli, Detective Hauri, and I went to the Ferndale Police Department.

12    Around 9:30 p.m., Ferndale Lieutenant VanderYacht called Officer Langton, informed him

13    that he was under investigation by the Bellingham Police Department, and asked him to

14    come to the Ferndale Police Station to pick up papers placing him on administrative leave.

15    Unfortunately, Officer Langton refused to come to the police station.

16        25.    Detective Hauri and I left the Ferndale Police Department and drove to

17    Officer Langton's residence in Blaine. Prior to our arrival, we heard over the radio that the

18    SWAT team had taken Officer Langton into custody.

19        26.    When we arrived, I learned that Officer Langton had already been advised

20    of his rights and that he had invoked his right to speak with a lawyer. Officer Langton was

21    placed in the back of a patrol vehicle, and I advised him that I had probable cause to

22    arrest him for "criminal attempt for solicitation of a minor." In hindsight, I could have been

23    clearer about this, because I was combining two different concepts: attempt and criminal

**SEAMARK LAW GROUP PLLC**
400 WINSLOW WAY E, STE 230
BAINBRIDGE ISLAND, WA 98110
(206) 502-2510

1    solicitation. But I had both concepts in mind because I believed the evidence showed that

2    Officer Langton had both attempted to rape or molest a child and that he had solicitated

3    Ms. Harp to allow access to her daughter so he could rape or molest her.

4        27.    Officer Langton asked me for the name of the complainant, and I declined

5    to discuss that with him but told him that he would be able to read it in the probable-cause

6    statement. When he asked again, I said that I was confused because I had been told he

7    wanted to speak with a lawyer but now he seemed to want to discuss the case. Officer

8    Langton affirmed that he wanted to speak with lawyer rather than giving a statement.

9    Detective Hauri then reiterated that Officer Langton could read the PC statement for

10   himself once he was at the jail. Other officers then transported Officer Langton to the

11   Skagit County Jail while I assisted with the search of the residence.

12       28.    After the SWAT team cleared the house, SWAT officers showed me where

13   documents were still smoldering in a backyard fire pit. The officers explained that once

14   crisis negotiators began calling Officer Langton to try to get him to surrender, the SWAT

15   team saw Officer Langton and his son carry items from the house and burn them in the

16   fire pit. I knew this would have been after Officer Langton was informed by Lieutenant

17   VanderYacht that he was under investigation, so it seemed clear to me that Officer

18   Langton had been intentionally destroying evidence. There was a partially burned

19   magazine atop the pile of burned papers, but that was the only thing that was still

20   readable.

21       29.    Inside the house, we located and seized multiple laptops and cell phones.

22   Officer Langton's personal cell phone, an iPhone, was found in the living room. When we

23   tried to switch the iPhone to "airplane mode" to prevent any ingoing or outgoing data, we

DECL. OF DET. TAYLOR ALLEN
(No. 2:24-cv-01073-KKE) - 9

**SEAMARK LAW GROUP PLLC**
400 WINSLOW WAY E, STE 230
BAINBRIDGE ISLAND, WA 98110
(206) 502-2510

1    observed that the phone was displaying the introduction to set-up screen. This indicated

2    that Officer Langton had just performed a factory reset on the phone. When a factory

3    reset is performed on an iPhone, all personal data is deleted from memory and cannot be

4    retrieved. Again, this clearly showed that Officer Langton had intentionally destroyed

5    evidence.

6        30.    In Officer Langton's bedroom, there was a large stockpile of ammunition

7    and three safes: a gun safe and two smaller safes. I called Deputy Prosecuting Attorney

8    Kooistra, and he advised me to seize the two smaller safes and to contact him the next

9    day for help seeking a warrant to open all three safes, as he did not want to call Judge

10    Jones again that evening.

11        **Follow-up investigation**

12        31.    The following morning, July 27, 2022, I spoke with the Whatcom County

13    prosecutors again. They advised that the crime of Attempted Child Molestation in the 2nd

14    Degree best fit the facts known at that time. I then amended the Probable Cause Affidavit

15    to reflect that charge and submitted it to the Skagit County Jail where Officer Langton was

16    being held. Attached as **Exhibit D** is the amended Probable Cause Affidavit. Please note

17    that I forgot to change the date from July 26 to July 27 when I completed it.

18        32.    I was also still investigating the crime of Possession of Depictions of Minors

19    Engaged in Sexually Explicit Conduct—that is, child pornography.

20        33.    On July 27, I appeared in person before Judge Jones to testify regarding

21    the additional facts learned and to apply for search warrants authorizing us to reenter

22    Officer Langton's home, to open his safes, and to search his electronic devices. Judge

23    Jones found there was probable cause to believe that Officer Langton had committed

**SEAMARK LAW GROUP PLLC**
400 WINSLOW WAY E, STE 230
BAINBRIDGE ISLAND, WA 98110
(206) 502-2510

1    Attempted Child Molestation in the 2nd Degree and Possession of Depictions of Minors

2    Engaged in Sexually Explicit Conduct, and he approved the warrants. Attached as

3    **Exhibit E** are these additional search warrants approved on July 27.

4        34.    We subsequently searched the safes but did not find anything of evidentiary

5    value.

6        35.    On July 28, I received and reviewed Forensic Detective Courtney's

7    Cellebrite extraction report for Ms. Harp's phone. It included around 1,100 text messages

8    that were exchanged between Ms. Harp and Officer Langton via both his work phone

9    number and his personal phone number. There were also hundreds of screenshot photos

10   of messages exchanged between the two via the Signal messaging app.

11       36.    On August 3, Forensic Detective Courtney informed me that he had located

12   data on Officer Langton's personal laptop that might be of evidentiary value. Through

13   forensic analysis, Detective Courtney determined that Officer Langton had accessed his

14   Microsoft OneDrive cloud storage at 9:48 p.m. on July 26. This was shortly after Officer

15   Langton learned he was under investigation and approximately three minutes before he

16   was taken into custody.

17       37.    That same day, I also learned from Detective Courtney and Matsudaira that

18   their search of Officer Langton's electronic devices had revealed four personal e-mail

19   addresses he was using. Three were for different Hotmail accounts and one was for an

20   Apple iCloud account.

21       38.    I asked Detective Courtney to send preservation letters to Microsoft for the

22   three Hotmail accounts. And after confirming with the Ferndale Police Department that

23   the iCloud account was not a work account, I sent preservation letters to Apple, Comcast,

DECL. OF DET. TAYLOR ALLEN
(No. 2:24-cv-01073-KKE) - 11

**SEAMARK LAW GROUP PLLC**
400 WINSLOW WAY E, STE 230
BAINBRIDGE ISLAND, WA 98110
(206) 502-2510

1    and Ring Incorporated.

2        39.    On August 10, 2022, I submitted to the Whatcom County Prosecuting

3    Attorney's Office an affidavit and proposed search warrants for records from Apple, AT&T

4    Wireless, Comcast, Verizon, and Microsoft. On August 12, while on scheduled days off, I

5    received an e-mail indicating that Judge Jones had approved the warrants after again

6    finding probable cause to believe that Officer Langton to believe that had committed

7    Attempted Child Molestation in the 2nd Degree and Possession of Depictions of Minors

8    Engaged in Sexually Explicit Conduct. When I returned to work on August 15, I sent out

9    the warrants. Attached as **Exhibit F** is the application for the search warrants, which the

10    judge approved on August 12. Unfortunately, none of the records I received in response

11    to the warrants included anything of evidentiary value.

12        40.    We were never able to determine what was on Officer Langton's iPhone

13    before he performed a factory reset or what he accessed and potentially deleted in his

14    OneDrive account minutes before he was arrested.

15        **Criminal prosecution**

16        41.    On July 28, 2022, the Whatcom County Prosecuting Attorney's Office

17    charged Officer Langton with Attempted Child Molestation in the 2nd Degree. Attached

18    as **Exhibit G** is the Information filed by the prosecutor. Also attached as **Exhibit H** is the

19    prosecutor's Declaration of Probable Cause, which includes and incorporates my

20    Probable Cause Affidavit.

21        42.    Based on the Determination of Probable Cause for Detention attached as

22    **Exhibit I**, Superior Court Commissioner Ann Vetter-Hansen found that probable cause

23    supported the charge that same day.

DECL. OF DET. TAYLOR ALLEN
(No. 2:24-cv-01073-KKE) - 12

43.    Approximately six months later, the prosecutor moved to dismiss the criminal case without prejudice on the grounds that there was insufficient evidence to prove beyond a reasonable doubt that Officer Langton took a substantial step towards commission of child molestation, despite sufficient evidence that he intended to commit that crime. Attached as **Exhibit J** is the motion to dismiss from the court file.

44.    Although the Whatcom County Prosecuting Attorney's Office informed me that they had decided to dismiss the case, I was not asked for my input. I believe that Officer Langton did take a substantial step toward committing Rape of a Child or Child Molestation by initiating a relationship with Ms. Harp after learning she had a 12-year-old daughter, spending two weeks grooming her and pestering her about his desire to have sex with a 12-year-old girl, and then telling Ms. Harp that he wanted to "play" with her daughter at a nude beach.

**PLAINTIFF'S CRITICISMS**

**The basis for Officer Langton's arrest**

45.    I understand that Mr. Langton contends he was arrested for a misdemeanor that was not witnessed by an officer, or that the charge listed in paperwork at the time of his arrest was erroneous. I'm not sure what misdemeanor he might be referencing, but members of the SWAT team did observe him committing the crime of Tampering with Physical Evidence (RCW 9A.72.150) when they saw him burning documents moments after he was informed that he was under investigation. More importantly, Officer Langton was arrested on suspicion of having committed several potential felonies, as described above. Although I see now that the phrase "criminal attempt for solicitation of a minor" is unclear, the evidence showed that Officer Langton had attempted to rape or molest a

1    child and that he had solicited Ms. Harp to allow access to her daughter so he could

2    rape or molest her. My recollection is that Deputy Prosecuting Attorneys Kooistra and

3    Pratt were the ones who suggested the label "attempted solicitation of a minor." And there

4    was also probable cause to arrest Officer Langton for possession of child pornography,

5    which was specifically listed in the July 26, 2022, warrant that the Superior Court issued

6    for the search of Officer Langton's home.

7         46.    I also understand that Mr. Langton contends it was somehow improper for

8    me to update the name of the crime to Attempted Child Molestation in the 2nd Degree in

9    the probable cause statement the morning after his arrest based on new advice from the

10   prosecutors. But it is a prosecutor's prerogative to advise detectives regarding what crime

11   best fits the facts. And this was always one of the potential crimes for which I believed I

12   had probable cause to arrest Officer Langton. It was not based on any new evidence

13   since the time of the arrest.

14        47.    When updating the paperwork, I forgot to change the date of my Probable

15   Cause Affidavit from July 26, 2022, to July 27, 2022. That was an unintentional oversight

16   that did not affect the substantive description of the evidence.

17        48.    At my deposition, Mr. Langton's attorney asked me some questions about

18   Ms. Harp referring to herself as an "informant" while speaking with a victim's advocate. I

19   don't recall Ms. Harp using the word "informant" when I interviewed her, but she did

20   mention that she had continued communicating with Officer Langton to gather more

21   evidence against him. This did not undermine my belief that she was a credible witness,

22   however, because she appeared to be genuinely concerned about Officer Langton's

23   actions and did not seem to have any ulterior motive for reporting him. And she provided

DECL. OF DET. TAYLOR ALLEN
(No. 2:24-cv-01073-KKE) - 14

**SEAMARK LAW GROUP PLLC**
400 WINSLOW WAY E, STE 230
BAINBRIDGE ISLAND, WA 98110
(206) 502-2510

1    text messages corroborating what she told me.

2        **Lieutenant Cristelli's role in the investigation**

3        49.    I understand that Mr. Langton contends that Lieutenant Cristelli improperly

4    influenced the criminal investigation. That is not true. I was the lead investigator for this

5    case, and Lieutenant Cristelli did not direct my investigation or push for any particular

6    outcome. To the best of my recollection, his primary role was coordinating with outside

7    agencies like the Ferndale Police Department and contacting Deputy Chief Almer when

8    we were ready to consult with him about how to make the arrest. Although both Lieutenant

9    Cristelli and Sergeant Crawford attended our meeting with Deputy Prosecuting Attorneys

10   Kooistra and Pratt, neither of them took a leading role. On the contrary, I presented the

11   facts to the group, and then Mr. Kooistra and Mr. Pratt advised us that there was probable

12   cause to arrest Officer Langton and suggested the appropriate charge.

13       **The manner in which Officer Langton was arrested**

14       50.    I understand that Mr. Langton contends we did not need to arrest him on

15   July 26. But given the nature of the crimes Officer Langton was believed to have

16   committed and his status as police officer, a custodial arrest was safest for Ms. Harp and

17   her family and was also the best way to try to prevent Officer Langton from destroying

18   evidence or otherwise "covering his tracks."

19       51.    While Mr. Langton may claim that Ms. Harp was not overly concerned about

20   her safety, I believe she was frightened of him. She wanted a protective order, she had

21   deceived Officer Langton about where she was that day, and she expressed concern that

22   Officer Langton might use his own son as a "shield" when police came to arrest him. I

23   was also concerned enough for her safety that I specifically urged Ms. Harp not to go

DECL. OF DET. TAYLOR ALLEN
(No. 2:24-cv-01073-KKE) - 15

**SEAMARK LAW GROUP PLLC**
400 WINSLOW WAY E, STE 230
BAINBRIDGE ISLAND, WA 98110
(206) 502-2510

1    home until after Officer Langton was arrested.

2          52.    A second reason it was appropriate to arrest Officer Langton that night was

3    to protect the integrity of the investigation. Officer Langton was texting Ms. Harp while

4    she was at the police station, consistent with their frequent messaging over the prior

5    weeks. If he became suspicious because she stopped responding to his texts, or if he

6    learned some other way that she had gone to the police, he might have destroyed even

7    more evidence or attempted to contact potential witnesses.

8          53.    Finally, I understand that Mr. Langton contends it was not necessary to use

9    a SWAT team to arrest him. The decision to deploy the SWAT team was Deputy Chief

10    Almer's, not mine. But the SWAT team made the arrest only after Officer Langton failed

11    to cooperate with other options and started destroying evidence.

12          Signed on October _2nd_, 2025, in Whatcom County, Washington.

13

14    Taylor Allen

15

16

17

18

19

20

21

22

23

DECL. OF DET. TAYLOR ALLEN
(No. 2:24-cv-01073-KKE) - 16

SEAMARK LAW GROUP PLLC
400 WINSLOW WAY E, STE 230
BAINBRIDGE ISLAND, WA 98110
(206) 502-2510

1

## CERTIFICATE OF SERVICE

2          I certify that on the date below I electronically filed the foregoing document with

3    the Clerk of Court using the CM/ECF system, which will send notification of such filing to

4    the following:

5              • **Counsel for Plaintiff**; and

6              • **Counsel for the City of Bellingham & Deputy Chief Almer**

7          DATED: October 10, 2025

8                                          *s/Geoff Grindeland*
                                           Geoff Grindeland

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

**SEAMARK LAW GROUP PLLC**
400 WINSLOW WAY E, STE 230
BAINBRIDGE ISLAND, WA 98110
(206) 502-2510